IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS
(NORTHERN DIVISION)

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 3 1 2021

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

-------------------------------------------------- -----------x
                            :

TYLER BAKER, individually, and on behalf of all  :
others similarly situated,                      :

                   Plaintiff,       :

                            :

       v.                       :

                            :

WALMART, INC.,                    :

                            :

               Defendant.     :
-------------------------------------------------------------x

Case No. 3:21-cv-182-DPM

CLASS ACTION COMPLAINT

**DEMAND FOR JURY TRIAL**

This case assigned to District Judge Marshall
and to Magistrate Judge Ray

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, brings this class action suit

for damages and injunctive relief for purchasers of Baby Food Products (as defined herein) that

Defendant Walmart, Inc. ("Walmart") marketed and sold without disclosing that they were

tainted with arsenic, lead, cadmium, and mercury ("Toxic Heavy Metals") at levels above what

is considered safe for babies. Plaintiff alleges the following based upon personal information as

to allegations regarding himself, on the investigation of his counsel, and on information and

belief as to all other allegations.

## BACKGROUND

1.       On February 4, 2021, the Subcommittee on Economic and Consumer Policy of the U.S. House of Representatives (the "Subcommittee") released a Report[1] concluding that baby food manufacturers, including Walmart, sold Baby Food Products containing concentrations of inorganic arsenic, lead, cadmium, and mercury at levels above what is considered safe for babies.

2.       Walmart does not disclose the Toxic Heavy Metal content of its foods on its labels or in its marketing materials, nor does it warn consumers that its Baby Food Products may contain potentially dangerous levels of Toxic Heavy Metals.

3.       Plaintiff and the Class members purchased Baby Food Products manufactured and sold by Walmart, unaware that Walmart products potentially contain Toxic Heavy Metals at levels well above what is considered safe for babies. Had Walmart disclosed the Toxic Heavy Metal content on its product labels, or otherwise warned that its products could contain levels of Toxic Heavy Metals considered unsafe, neither Plaintiff nor any other reasonable consumer would have purchased Walmart's products.

4.       Plaintiff brings this class action on his own behalf and on behalf of other purchasers of Walmart's Baby Food Products,[2] to seek refunds and all other economic losses suffered as a result of their purchases of Walmart's Baby Food Products, as well as injunctive relief.

---

[1] Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report ("Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[2] The term "Baby Food Products" refers to Baby Food Products that contain Toxic Heavy Metals, including Baby Food Products purchased by Plaintiff. Plaintiff reserves the right to amend this definition as his investigation continues and he has had an opportunity to conduct discovery.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §

1332(d). The amount in controversy in this class action exceeds $5,000,000, exclusive of interest

and costs, and there are numerous Class members who are citizens of states other than Walmart's

state of citizenship, and more than two-thirds of the Class members reside in states other than the

state in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C.

§1332(d)(2) do not apply.

6.      This Court has personal jurisdiction over Walmart in this matter. Walmart is a

Delaware corporation, headquartered in Arkansas. Moreover, Walmart has been afforded due

process because it has, at all times relevant to this matter, individually or through its agents,

subsidiaries, officers and/or representatives, operated, conducted, engaged in and carried on a

business venture in this state, and/or marketed, advertised, distributed and/or sold products, and

caused injuries to Plaintiff and Class Members.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Walmart

transacts substantial business and/or has agents within this District and have intentionally availed

itself of the laws and markets within this district.

## PARTIES

8.      Plaintiff Tyler Baker is a resident of the State of Vermont.  Mr. Baker purchased

Baby Food Products made by Defendant Walmart in the State of Vermont and the State of

Kentucky.[3]

---

[3] Mr. Baker purchased: organic green been medley vegetable puree; mango, banana & kale fruit
& veg puree; tropical burst fruit puree; berries & oats fruit puree; banana berry burst fruit puree;
just banana fruit puree; organic sweet potato, apple & grape fruit & veg puree; sweet potato &
cinnamon vegetable puree; white cheddar crunchers; mango; butternut squash; carrot; sweet

9.      Defendant Walmart is a Delaware corporation with corporate headquarters in Arkansas. Walmart sells Baby Food Products under the Parent's Choice brand. Walmart's Baby Food Products are sold and purchased throughout the United States.

## FACTS

A.      <u>Walmart Touts the Quality and Safety of Its Baby Food Products</u>.

10.      Few things are as precious as babies are to their parents and other caretakers. Consumer research from The Nielsen Company shows that the "big three" attributes buyers look for in a baby food product are a trusted brand, good infant nutrition, and the safety of the products for consumption by children.[4]

11.      Consumers expect that baby food manufacturers will regard their children's health and safety as paramount concerns when it comes to formulating their products, sourcing their ingredients, and testing for safety, and that manufacturers will be transparent in their labelling and marketing about what goes into their Baby Food Products.[5]

12.      Unsurprisingly, Walmart touts its Baby Food Products as being tested as safe for babies, in compliance with government regulations, and as containing only safe ingredients. For example, Walmart's website claims that, "Walmart's special range of products for baby has been the choice of parents in American homes for years. What started as a line of baby formula is now a complete baby collection specially selected with love and attention to this special time in your

---

potato little hearts puffed grain snack; blueberry little hearts puffed grain snack; little hearts strawberry apple cereal snack; banana little hearts puffed grain snack; blueberry rice rusks gluten-free baked rice snack; organic apple rice rusks gluten-free baked rice snack; organic vanilla yogurt bites; and mixed berry yogurt bites.

[4] OH, BABY! Trends in the Baby Food and Diaper Markets Around the World, at 17 (The Nielsen Company, August 2015) https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/Global20Baby20Care20Report20Revised20FINAL-2.pdf (accessed March 1, 2021).

[5] *Id.*

family's life. With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need...."[6]

13.     However, Walmart's statements and marketing are incomplete, misleading and deceptive with respect to the existence and concentrations of Toxic Heavy Metals in its products.

14.     Walmart knows that Plaintiff and the other Class members lack the scientific knowledge and resources necessary to test or assess whether the Baby Food Products they purchase contain levels of Toxic Heavy Metals exceeding levels that are safe for babies and, as a result, duped consumers into believing its products were safe.

B.     Walmart Sold Baby Food Products Tainted by Toxic Heavy Metals.

15.     Scientists and child development experts have long known that childhood exposure to Toxic Heavy Metals can cause a number of adverse neurological, cognitive, and other developmental consequences. Many of these changes are irreversible, including permanent losses in IQ, memory, and comprehension, as well as ADHD and behavioral problems that persist into adulthood and result in reduced earning capacity.

16.     The FDA cautions that Toxic Heavy metals have "no established health benefit" and "even low levels of harmful metals from individual food sources, can sometimes add up to a level of concern."[7]

---

[6] https://www.walmart.com/cp/parents-choice-baby-products/4549164. (last accessed July 6, 2021).
[7] Report, pp. 9-10 (quoting "Food and Drug Administration, Metals and Your Food" (online at www.fda.gov/food/chemicals-metals- pesticides-food/metals-and-your-food) (accessed Jan. 26, 2021)).

17.     There is no level of Toxic Heavy Metal exposure that is considered acceptable for babies. Child advocacy organizations such as Healthy Babies Bright Futures recommends a goal of "no measurable amount" of Toxic Heavy Metals in Baby Food Products.[8]

18.     In November 2019, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform ("Subcommittee"), sought internal testing records and other documents from several baby food manufacturers, including Walmart, to investigate concerns about heavy metals in baby foods.

19.     Based on this investigation, the Subcommittee concluded that "commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium."[9]

20.     The Subcommittee further found that baby food manufacturers "knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever."[10]

21.     The Subcommittee added that, "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather, baby food producers like Walmart" are compounding the problem by "adding ingredients that have high levels of toxic heavy metals into their products, such as vitamin/mineral pre-mix."[11]

22.     The Subcommittee also criticized the industry's testing practices.[12]

---

[8] Report, pp. 13, 21, 29, &32) (citing Healthy Babies Bright Futures, *What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead* (Oct. 2019) (online at www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).
[9] Report, p. 59.
[10] *Id.*
[11] Report, p. 56.
[12] Report, p. 13.

23.     According to the Subcommittee, Walmart failed to cooperate with its investigation and refused to produce any documents showing its internal testing policies or results. However, "…independent testing has revealed the presence of toxic heavy metals in [Walmart's] baby food."[13]

24.     The Subcommittee indicated that it was "greatly concerned" that Walmart "might be obscuring the presence of even higher levels of toxic heavy metals in their baby food products" than its competitors, because it refused to cooperate with the Subcommittee's investigation.[14]

25.     **Inorganic Arsenic.** Regulation of inorganic arsenic in baby food is limited. According to the Subcommittee Report, the FDA has set a maximum allowable level of 10 parts per billion (ppb) for both bottled and tap water; however, there "is no established safe level for consumption inorganic arsenic for babies."[15]

26.     The Subcommittee reported that independent testing showed that a Parent's Choice product contained inorganic arsenic levels averaging 66 ppb.[16]

27.     **Lead.**  While there are no Federal standards for lead in baby foods, the Subcommittee found "a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."[17]

28.     Independent testing showed that Parent's Choice products contained lead amounts ranging from 5.2 ppb up to 26.9 ppb.[18]

---

[13] Report, p. 43.
[14] Report p. 43.
[15] Report, p. 51.
[16] Report, p. 43
[17] Report, p. 21.
[18] Report, p. 43.

29.  **Cadmium.** While there are no federal standards for cadmium in baby foods, the Subcommittee identified proposed and existing cadmium standards including 5 ppb for drinking water (FDA and EPA). [19]

30.  Independent testing showed that Parent's Choice products contained up to 26.1 ppb of Cadmium.[20]

31.  **Mercury.** There are also no federal standards for Mercury in baby foods. The EPA limits mercury in drinking water to 2 ppb."[21] Independent testing showed that Parent's Choice products contained up to 2.05 ppb of mercury.[22]

32.  The concentrations of Toxic Heavy Metals as reported by the Subcommittee showed that Walmart is knowingly selling finished Baby Food Products and/or using ingredients that contained potentially dangerous levels of Toxic Heavy Metals.

C.  Plaintiff and Other Class Members Were Harmed.

33.  Prior to the release of the Subcommittee Report, Plaintiff and each member of the proposed Classes purchased one of more Baby Food Products manufactured and sold by Walmart, intending for them to be fed to children and believing that they were of high quality and safe for children to consume. Plaintiff was unaware that Walmart would sell Baby Food Products that contained undisclosed dangerous levels of Toxic Heavy Metals.

34.  Based on Walmart's product labeling and marketing materials, Plaintiff did not expect, and no reasonable consumer would have expected, that any of Walmart's Baby Food Products contained Toxic Heavy Metals at unsafe levels.

---

[19] Report, p. 21.
[20] Report, p. 43.
[21] Report, p. 32.
[22] Report, p. 43.

35.     Had Plaintiff and the other Class members known that Walmart was selling Baby Food Products containing Toxic Heavy Metals above levels considered safe for their infants as revealed in the Subcommittee Report, they never would have purchased Walmart's Baby Food Products.

36.     Upon learning that Walmart's Baby Food Products potentially contain Toxic Heavy Metals at levels considered unsafe for children, Plaintiff no longer believed the Walmart's Baby Food Products were quality products or safe for consumption by babies and children.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as a representative of all those similarly situated, on behalf of a proposed nationwide class defined as: All persons in the United States who purchased Walmart's Baby Food Products (the "National Class"). Excluded from the Class are Walmart, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

38.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Vermont class defined as: All persons who purchased Walmart's Baby Food Products in the State of Vermont (the "Vermont Class"). Excluded from the Class are Walmart, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

39.     Plaintiff also brings this action pursuant to Federal Rule of Civil Procedure 23, individually and as representative of all those similarly situated, on behalf of a proposed Kentucky class defined as: All persons who purchased Walmart's Baby Food Products in the State of Kentucky (the "Kentucky Class"). Excluded from the Class are Walmart, its present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies, and instrumentalities, and purchasers for resale.

40.     The members of each of the Classes are so numerous that their individual joinder is impracticable. On information and belief, members of each of the Classes number in the tens or hundreds of thousands. The precise number of members of each of the Classes and their addresses are presently unknown to Plaintiff but may be ascertained from grocery and other records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

41.     Common questions of law and fact exist as to all members of each Class and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

    a.      Whether Walmart's Baby Food Products contain Toxic Heavy Metals at levels higher than what is considered safe for babies;

    b.      Whether Walmart misrepresented to Plaintiff and the Class members that its Baby Food Products were safe for consumption by babies and did not contain potentially unsafe levels of Toxic Heavy Metals;

    c.      Whether Walmart omitted and concealed the fact that its Baby Food Products contained Toxic Heavy Metals higher than levels considered safe for babies;

    d.      Whether the presence of Toxic Heavy Metals in Walmart's Baby Food Products was a material fact to Plaintiff and Class members;

e.      Whether Walmart's conduct violated Vermont's Consumer Protection Act;

f.      Whether Walmart's conduct violation Kentucky's Consumer Protection Act;

g.      Whether Walmart breached express or implied warranties to Plaintiff and the Class members; and

h.      Whether Walmart's conduct resulted in Walmart unjustly retaining a benefit to the detriment of Plaintiff and Class members, and violated the fundamental principles of justice, equity, and good conscience.

42.     Plaintiff's claims are typical of the claims of the other members of the Classes, because, among other things, Plaintiff and all Class members suffered the same type of injury, namely, paying for a product that they otherwise would not have purchased had Walmart disclosed the presence of Toxic Heavy Metals in its Baby Food Products. Further, there are no defenses available to Walmart that are unique to Plaintiff.

43.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in class action litigation, and he and his counsel will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

44.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes individually are relatively small compared to the burden and expense that would be required to separately litigate their claims against Walmart, so it would be uneconomical and impracticable for Class members to individually seek redress for Walmart's wrongful conduct. Even if Class members could afford individual litigation, the court

system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## BREACH OF EXPRESS WARRANTY
**(On Behalf of the National Class and Each State Class)**

45.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

46.     This cause of action is brought on behalf of the each of the Classes against Walmart.

47.     In connection with its sale of Baby Food Products, by and through statements in labels, publications, package inserts, and other written materials intended for consumers and the general public, Walmart made certain express affirmations of fact and/or promises relating to its Baby Food Products to Plaintiff and the Classes, as alleged herein, including that such Baby Food Products were safe for consumption by infants and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the risks associated with use of Baby Food Products containing Toxic Heavy Metals.

48.     Walmart advertised, labeled, marketed, and promoted Baby Food Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff and the Classes, thereby making an express warranty that Baby Food Products would conform to the representations.

49.    Walmart's affirmations of fact and/or promises about Baby Food Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

50.    Despite the express warranties Walmart created with respect to Baby Food Products, Walmart delivered Baby Food Products to Plaintiff and the Classes that did not conform to Walmart's express warranties in that such Baby Food Products were defective, dangerous, and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, Walmart breached the express warranties by representing through its labeling, advertising, and marketing materials that its Baby Food Products were safe, and intentionally withheld information about the contents and risks associated with use of the Baby Food Products.

51.    Walmart had sole access to material facts concerning the nature of the risks associated with its Baby Food Products, as expressly stated on their labels, and knew that consumers and purchasers such as Plaintiff could not have reasonably discovered that the risks expressly included in Baby Food Products' labels or other statements about their Baby Food Products were inadequate and inaccurate. Plaintiff and each member of the Classes have had sufficient direct dealings with either Walmart or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Walmart, on the one hand, and Plaintiff and each member of the Classes, on the other hand.

52.    Walmart's breaches of their express warranties were knowing, intentional and demonstrated a complete disregard for the promises it had made to Plaintiff and the Class.

53.     As a direct and proximate result of Walmart's breaches of express warranties, as alleged herein, Plaintiff and the Classes sustained an economic loss in an amount to be proven at trial.

54.     As a result of Walmart's breaches of express warranties, as alleged herein, Plaintiff and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT II
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the National Class and Each State Class)

55.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

56.     This cause of action is brought on behalf of the each of the Classes against Walmart.

57.     At all relevant times, Walmart was a merchant with respect to Baby Food Products that were sold to Plaintiff and members of the Classes and was in the business of selling such products.

58.     Each Baby Food Product sold by Walmart comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

59.     Walmart breached its implied warranty of merchantability because its products were not in merchantable condition when sold.

60.     Walmart's Baby Food Products are not fit for the ordinary purpose for which they were sold because they contain Toxic Heavy Metals.

61.     Plaintiff and members of the Classes were injured as a direct and proximate result of Walmart's breaches of implied warranties of merchantability. Plaintiff and members of the

Classes were damaged as a result of Walmart's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Baby Food Products, they would not have purchased such products.

62.     As a result of Walmart's breaches of implied warranties of merchantability, as alleged herein, Plaintiff and the Classes seek an order awarding compensatory damages and any other just and proper relief available under the law.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the National Class and Each State Class)**

63.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

64.     This cause of action is brought on behalf of each of the Classes against Walmart.

65.     Walmart intended and expected that, as a result of its knowing wrongful acts as alleged above, Walmart would profit and benefit from sales of Baby Food Products that would otherwise have not occurred.

66.     Walmart voluntarily accepted and retained these profits and benefits, knowing full well that Plaintiff and the other Class members received Baby Food Products that were not of a quality level that reasonable purchasers expect of foods intended for babies.

67.     Walmart has been unjustly enriched by its wrongful and deceptive withholding of benefits to its customers at the expense of Plaintiff and the Class members.

68.     Principles of equity and good conscience preclude Walmart from retaining these profits and benefits.

69.     As a direct and proximate result of Walmart's unjust enrichment, Plaintiff and the Class members suffered injury and seek an order compelling Walmart to disgorge and return to Plaintiff and the Class members the amounts that each Class member paid to the Walmart.

### COUNT IV
### VIOLATION OF THE VERMONT CONSUMER PROTECTION ACT
### (9 V.S.A. § 2453, *ET SEQ.*)
### (On Behalf of the Vermont State Class)

70.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

71.     This cause of action is brought on behalf of the Vermont Class against Walmart. Plaintiff and the Vermont class members are "[c]onsumer[s]" within the meaning of 9 V.S.A. § 2451a(a), as amended by 2021 Vermont Laws No. 20 (H. 366).

72.     Walmart is a "[s]eller" within the meaning of 9 V.S.A. § 2451a(c), as amended by 2021 Vermont Laws No. 20 (H. 366).

73.     The Baby Food Products are "goods" within the meaning of 9 V.S.A. § 2451a(b), as amended by 2021 Vermont Laws No. 20 (H. 366).

74.     Plaintiff and the Class purchased Baby Food Products from Walmart in reliance on Walmart's representations regarding the Baby Food Products' safety.

75.     In the course of its business, Walmart, through its agents, employees, and/or subsidiaries, engaged in deceptive and unfair business practices and acts in violation of 9 V.S.A. § 2453 by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts that its Baby Food Products contained Toxic Heavy Metals at unsafe levels that rendered them unfit to be used for their intended purpose, as detailed above.

76.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above,

Walmart engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Vermont Consumer Protection Act, including:

      a.      representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

      b.      representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

      c.      advertising the Baby Food Products with the intent not to sell them as advertised; and

      d.      engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

77.     Walmart's misrepresentations and omissions regarding its Baby Food Products were disseminated to Plaintiff and the Vermont Class members in a uniform manner.

78.     Specifically, Walmart's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the Vermont Class members, that the Baby Food Products are considered safe for consumption by babies.

79.     The facts regarding Baby Food Products that Walmart knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Vermont Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

80.     Plaintiff and the Vermont Class members had no way of discerning that Walmart's representations were false and misleading, or otherwise learning the facts that

Walmart had concealed or failed to disclose. Plaintiff and the Vermont Class members did not, and could not, overcome Walmart's deception on their own.

81.     Walmart had an ongoing duty to Plaintiff and the Vermont Class members to refrain from unfair or deceptive practices under the Vermont Consumer Protection Act in the course of its business. Specifically, Walmart owed Plaintiff and Vermont Class members a duty to disclose all the material facts concerning Toxic Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally failed to disclose the Toxic Heavy Metal content of Baby Food Products to Plaintiff and the Vermont Class members, and/or it made representations that were rendered misleading because they were contradicted by known but withheld facts.

82.     Plaintiff and the Vermont Class members were aggrieved by Walmart's violations of the Vermont Consumer Protection Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Walmart's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products, including that such Baby Food Products contained Toxic Heavy Metals at levels above those considered safe for consumption by babies and not fit to be used for their intended purpose. Specifically, Plaintiff and the Vermont Class members purchased Baby Food Products in reliance on Walmart's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Walmart not engaged in the deceptive acts and practices alleged herein, Plaintiff and other Vermont Class members would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

83.     Walmart's violations present a continuing risk to Plaintiff and the Vermont Class members, as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

84.     Walmart was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against it.

85.     Because Walmart failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Vermont Class members are entitled.

86.     As a result of Walmart's violations of the Vermont Consumer Protection Act, as alleged herein, Plaintiff and the Vermont Class members seek an order enjoining Walmart's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Vermont Consumer Protection Act.

## COUNT V
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
### (K.R.S. § 367.170, *ET SEQ.*)
### (On Behalf of the Kentucky State Class)

87.     Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

88.     This cause of action is brought on behalf of the Kentucky Class against Walmart pursuant to K.R.S. § 367.220.

89.     Walmart, Plaintiff, and the Kentucky Class members are "[p]erson[s]" within the meaning of K.R.S. § 367.110(1).

90.     Walmart was and is engaged in "[t]rade" and "commerce" within the meaning of K.R.S. § 367.110(2).

19

91.     The Kentucky Consumer Protection Act prohibits "Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce…." K.R.S. § 367.170(1).

92.     In the course of its business Walmart, through its agents, employees, and/or subsidiaries, violated the Kentucky Consumer Protection Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts that its Baby Food Products contained Toxic Heavy Metals at unsafe levels that rendered them unfit to be used for their intended purpose, as detailed above.

93.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Baby Food Products, as detailed above, Walmart engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Kentucky Consumer Protection Act, including:

    a.    representing that the Baby Food Products have characteristics, uses, benefits, and qualities which they do not have;

    b.    representing that the Baby Food Products are of a particular standard, quality, and grade when they are not;

    c.    advertising the Baby Food Products with the intent not to sell them as advertised; and

    d.    engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

94.     Walmart's misrepresentations and omissions regarding its Baby Food Products were disseminated to Plaintiff and the Kentucky Class members in a uniform manner.

95.     Specifically, Kentucky's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, or suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff and the

Kentucky Class members, that the Baby Food Products are considered safe for consumption by babies.

96.    The facts regarding Baby Food Products that Walmart knowingly and intentionally misrepresented, omitted, concealed, or failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff and the Kentucky Class members, who consider such facts to be important to their purchase decisions with respect to Baby Food Products.

97.    Plaintiff and the Kentucky Class members had no way of discerning that Walmart's representations were false and misleading, or otherwise learning the facts that Walmart had concealed or failed to disclose. Plaintiff and the Kentucky Class members did not, and could not, overcome Walmart's deception on their own.

98.    Walmart had an ongoing duty to Plaintiff and the Kentucky Class members to refrain from unfair or deceptive practices under the Kentucky Consumer Protection Act in the course of its business. Specifically, Walmart owed Plaintiff and Kentucky Class members a duty to disclose all the material facts concerning Toxic Heavy Metals in Baby Food Products because it possessed exclusive knowledge, it intentionally failed to disclose the Toxic Heavy Metal content of Baby Food Products to Plaintiff and the Kentucky Class members, and/or it made representations that were rendered misleading because they were contradicted by known but withheld facts.

99.    Plaintiff and the Kentucky Class members were aggrieved by Walmart's violations of the Kentucky Consumer Protection Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Walmart's knowing and intentional misrepresentations, omissions, concealments, and failures to disclose material facts regarding

Baby Food Products, including that such Baby Food Products contained Toxic Heavy Metals at levels above those considered safe for consumption by babies and not fit to be used for their intended purpose. Specifically, Plaintiff and the Kentucky Class members purchased Baby Food Products in reliance on Walmart's misrepresentations, omissions, concealments, and failures to disclose material facts regarding Baby Food Products. Had Walmart not engaged in the deceptive acts and practices alleged herein, Plaintiff and other Kentucky Class members would not have purchased the Baby Food Products, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

100.    Walmart's violations present a continuing risk to Plaintiff and the Kentucky Class members, as well as to the general public. Walmart's unlawful acts and practices complained of herein affect the public interest.

101.    Walmart was provided notice of the issues raised in this count and this Complaint by the Subcommittee Report and other lawsuits filed against it.

102.    Because Walmart failed to adequately remedy its unlawful conduct within the requisite time period, Plaintiff seeks all damages and relief to which Plaintiff and the Kentucky Class members are entitled.

103.    As a result of Walmart's violations of the Kentucky Consumer Protection Act, as alleged herein, Plaintiff and the Kentucky Class members seek an order enjoining Walmart's unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Kentucky Consumer Protection Act.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek

a judgment against Walmart, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes as set forth above and appointing Plaintiff's attorneys as Class Counsel;

b.    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

c.    For an order enjoining Walmart from selling Baby Food Products until the higher and/or unsafe levels of Toxic Heavy Metals are removed or full disclosure of the presence of Toxic Heavy Metals appears on all labels, packaging, and advertising;

d.    For an order enjoining Walmart from selling Baby Food Products while in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

e.    For an order requiring Walmart to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

f.    For damages in amounts to be determined by the Court and/or jury;

g.    For prejudgment interest on all amounts awarded;

h.    For an order of restitution and all other forms of equitable monetary relief; and

i.    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

Dated: August 31, 2021                    Respectfully submitted,

Stephanie Egner Smith, Ark. Bar No. 2004119
**ROBERTS LAW FIRM US, PC**
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
stephaniesmith@robertslawfirm.us

William E. Hoese, *pro hac vice forthcoming*
Douglas A. Abrahams, *pro hac vice forthcoming*
Craig W. Hillwig, *pro hac vice forthcoming*
Barbara Gibson, *pro hac vice forthcoming*
Aarthi Manohar, *pro hac vice forthcoming*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
whoese@kohnswift.com
dabrahams@kohnswift.com
chillwig@kohnswift.com
bgibson@kohnswift.com
amanohar@kohnswift.com

David H. Fink, *pro hac vice forthcoming*
Nathan J. Fink, *pro hac vice forthcoming*
**FINK BRESSACK**
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

*Attorneys for Plaintiff*